JACK HANSEN, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF SCHOOL DISTRICT No. 65, Defendant-Appellee.

Second District   No. 2—85—0869

Opinion filed December 24, 1986.

Wayne A. Schwartzman and Roy D. Winn, both of Wayne Schwartzman & Associates, P.C., of Chicago, for appellant.

Kathleen M. Roche, George E. Riseborough, and Ralph Miller, all of Brydges, Riseborough, Morris, Franke & Miller, of Chicago, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

The plaintiff, Jack Hansen, alleges that the defendant, the board of education of School District No. 65 (hereinafter board), illegally reduced his salary and removed or dismissed him without a hearing, both in contravention of the Illinois School Code (hereinafter Code) (Ill. Rev. Stat. 1985, ch. 122, par. 24—12). The circuit court had previously granted defendant's motion to dismiss the plaintiff's complaint. That decision was reversed by this court in an order pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23), and the cause was remanded for the circuit court to consider additional evidence. (*Hansen v. Board of Education* (1984), 122 Ill. App. 3d 1160.) Subsequently, further discovery was conducted by both parties. After this discovery was completed, both parties agreed there existed no disputed material facts and by agreement tendered motions for summary judgment with accompanying memoranda. The circuit court granted summary judgment for the defendant. It is from such decision that plaintiff appeals.

Plaintiff was initially employed by the board as an instrumental music teacher in 1970 and held that position until the end of the 1980-81 school term. He holds a Type 10 teaching certificate issued by the State of Illinois. As an instrumental music teacher, plaintiff's duties included instructing students in reading music, music theory and appreciation, and playing various instruments. He was also required to rehearse the band four times a week in order to prepare the students for concerts given in the fall, at Christmas, and in the spring. He performed all of the functions of a regular teacher, including developing lesson plans, evaluating student performances, and making recommendations for student development.

Parental complaints regarding Hansen and the band's performance first arose in the 1971-72 school years. On April 14, 1972, plaintiff and the superintendent of District No. 65 met to discuss plaintiff's attendance, his criticism of children in the band, his instructing methods and procedures, the dropout rate of the band, and the quality of

the band performance. In 1975, complaints regarding plaintiff's job as a band instructor arose again and resulted in the board drafting a resolution on February 6, 1975, specifying the complaints against plaintiff and informing him that unless prompt improvements were made, the board would bring charges against him which might result in termination of his employment. Again during the 1979-80 school year, complaints regarding plaintiff's ability as a music teacher arose. In September 1979, the chairman of the music department of high school District No. 115 was requested by the superintendent of District No. 65 to submit his views regarding the music program in the Lake Bluff schools. In response to this request, the chairman submitted a four-page report which was highly critical of plaintiff and his teaching performance. The report was critical of the high dropout rate in Lake Bluff, plaintiff's work attitude, and his inability to structure and realize goals.

On March 26, 1980, the board of education gave the plaintiff a formal notice to remedy certain problems and offered any aid or assistance which would be necessary in order to carry out the remediation. The board also notified the plaintiff that because of his inadequate performance as reflected in his annual evaluation and in the board's notice of deficiencies, he would not receive a salary increase for the 1980-81 school term, essentially because his performance did not merit an increase.

In the fall of 1980, plaintiff agreed to an independent study of the district's instrumental program. At plaintiff's suggestion, the music department of Northwestern University conducted the study. In a written report, the Northwestern University consultants noted that the number of students continuing in the band program in high school "is shockingly small, the instrumental music program is functioning significantly below its potential," and plaintiff's teaching was deficient in several areas. The assessors indicated that the plaintiff's "organizational abilities are limited and insufficient, his teaching 'posture' is occasionally quite harsh," and he does not provide encouragement to the students. In conclusion, the assessors noted that the plaintiff was "struggling to overcome serious problems." Plaintiff was allowed to read the consultant's report, and he discussed its findings with the district superintendent at a meeting to review plaintiff's progress in remediation.

In March 1981, the board issued a formal plan for remediation for the 1981-82 school term which provided specific approaches to improving the areas in which the plaintiff's performance was deemed to be deficient.

In June 1981, a survey was taken of the parents of students enrolled in the instrumental music program. Plaintiff was sent a summary of the results of the survey and was afforded an opportunity to review the returned surveys at his convenience. The parents' comments reiterated many of the same concerns previously expressed, *i.e.*, disorganization, lack of encouragement, inadequate communication with parents and students, and absenteeism.

In fall 1981, a second independent evaluation was performed, this time by the music department of the University of Illinois. In their written evaluation, the consultants stated that:

> "[the] Lake Bluff instrumental program is *not* as good as it should be or could be \*\*\*. In essence, we doubt that significant or lasting change will be possible with this particular teacher. Thus, we believe that the program under Mr. Hansen's direction is as good as it will ever be. Were the decision ours to make, we would recommend the hiring of another instrumental teacher who would assume complete control of the program."

On March 24, 1982, plaintiff was notified that the board was authorizing the district superintendent to hire a new band director. Plaintiff was also informed that the board was again going to fix his salary for the upcoming 1982-83 school year at the previous year's level and that he was going to be assigned nonteaching duties in the future. At his deposition, the district superintendent stated that, in his judgment, this freeze was imposed because his new duties were not worth more money.

Since his reassignment at the beginning of the 1982-83 term, plaintiff no longer develops lesson plans or goals for students. Instead, he has been assigned to watch students who are in the process of embarking and disembarking from the buses, to watch students eating, and to monitor students in study hall. The district superintendent indicated that although other certificated teachers performed plaintiff's present duties in the past, no one particular person was ever assigned to perform all of these duties. Instead, a variety of teachers was assigned these duties depending upon the teacher's work load. The principal, in plaintiff's 1982-83 evaluation, indicated that there was no precedent for this "position." This evaluation reflected the opinion of both the principal and other teachers in the school that the plaintiff's duties were very light and lacking any substantive teaching responsibilities. His assignment was labeled that of an "itinerant."

In addition to removing plaintiff from his teaching duties, the board has not granted any further salary increases to him. The board

indicated that plaintiff's duties were not of a sufficient value to the school district to warrant a salary increase.

Plaintiff has been paid the same salary of $22,756 that he received in the 1979-80 school year in the subsequent school years of 1980-81, 1981-82, 1982-83, 1983-84, and 1984-85. His evaluations following his new assignment in 1982-83 have indicated that the "position" requires further development, that his performance has been acceptable, but that absenteeism remains a serious problem.

On appeal, plaintiff raises two issues: (1) whether the trial court abused its discretion in determining that plaintiff's reassignment was not a "removal" or a "dismissal" within the meaning of section 24—12 of the Code, and (2) whether the trial court improperly held that plaintiff's failure to receive a salary increase for the past five years was not a violation of plaintiff's rights under section 24—11 of the Code.

Both parties acknowledge that plaintiff had secured tenure pursuant to the tenure provision of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—12) prior to his reassignment. It is plaintiff's contention that his reassignment constituted a removal or dismissal under section 24—12 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—12) which governs the procedure for dismissal of a tenured teacher. The statutory bases for dismissal are set forth as follows:

> "To dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause, to dismiss any teacher who fails to complete a 1-year remediation plan with a 'satisfactory' or better rating and to dismiss any teacher whenever, in its [school board] opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24—10 to 24—15, inclusive." Ill. Rev. Stat. 1985, ch. 122, par. 10—22.4.

If dismissal of a tenured teacher is sought for cause, including those set forth in section 10—22.4, such teacher is entitled to notice of the specific charges for dismissal and to a hearing before a disinterested hearing officer (see Ill. Rev. Stat. 1985, ch. 122, par. 24—12). Plaintiff asserts that at the point in time the board resolved to remove plaintiff as a music teacher and reassign him to a nonteaching position, the board was obligated to instead recommend dismissal and grant plaintiff a hearing on the matter pursuant to statute.

■ The purpose of the tenure provisions of the Code is to assure teachers of experience and ability a continuous service and rehiring based upon merit rather than failure to be rehired for reasons that are political, partisan, or capricious. (*Herbach v. Board of Education*

(1981), 94 Ill. App. 3d 889, 894; *Johnson v. Board of Education* (1980), 87 Ill. App. 3d 441, 443, *aff'd* (1981), 85 Ill. 2d 338.) Courts cannot countenance, in good faith or bad, any actions of a school board to rearrange teaching positions or assignments in ways which defeat the rights of tenured teachers and circumvent the purpose and spirit of the tenure laws. *McLain v. Board of Education* (1978), 66 Ill. App. 3d 1024, 1026; *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 944.

■■ The respondent board contends that plaintiff's tenure rights have not been abridged, for section 24—11 explicitly provides:

> "Contractual continued service status [tenure] shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill ***." (Ill. Rev. Stat. 1985, ch. 122, par. 24—11.)

The purpose of the transfer provision is to allow school boards the flexibility that school boards need in order to efficiently operate our public schools. (*Wilfong v. Collinsville Community Unit School District No. 10* (1982), 107 Ill. App. 3d 930, 933; *Craddock v. Board of Education* (1979), 76 Ill. App. 3d 43, 45, *aff'd* (1980), 81 Ill. 2d 28.) School boards are granted broad discretion in creating new *teaching* assignments and in rearranging *teaching* assignments in all cases except where the continued employment of a tenured teacher may be jeopardized. (*Wilfong v. Collinsville Community Unit School District No. 10* (1982), 107 Ill. App. 3d 930, 933; *Higgins v. Board of Education* (1980), 101 Ill. App. 3d 1003, 1006.) The key here is that plaintiff was not reassigned to a teaching position of any sort. The board authorized the district superintendent to hire a new band director, then assigned plaintiff to the full-time position of proctor, *i.e.,* being present in the morning and afternoon when the children board their buses, keeping control in the hallways and maintaining order in study hall and at lunch period. Plaintiff has no duties comparable to those performed daily by a teacher in the instruction of pupils. The comments of plaintiff's fellow teachers were noted in his 1982-83 performance evaluation. Numerous staff were dissatisfied in comparing plaintiff's work load and responsibilities to theirs. The conclusion in plaintiff's evaluation was "there is a decided opinion that comparability is low."

The board's argument that they simply, pursuant to statute, transferred plaintiff to another position he is "qualified to fill" is without merit. The term "qualified" has been defined as "[t]o make oneself competent *for* something *by* fulfilling some necessary condition." (Emphasis added.) (The Oxford Universal Dictionary 1635 (1955).) Plaintiff

is not qualified, *i.e.*, has not taken steps to become proficient, in performing duties that can be assigned to nonteaching personnel. Among the powers and duties of the district are the discretion to "employ non-teaching personnel or utilize volunteer personnel for non-teaching duties not requiring instructional judgment or evaluation of pupils" (Ill. Rev. Stat. 1985, ch. 122, par. 10–22.34), and "[t]o designate noncertificated persons of good character to serve as supervisors *** for school activities not connected with the academic program of the schools" (Ill. Rev. Stat. 1985, ch. 122, par. 10–22–34a). Plaintiff's new position requires no particular qualifications and could be performed by noncertificated volunteers.

■ In the general conduct of its affairs, the school board has authority to transfer certified personnel to lesser positions, including lower paying positions, for *bona fide* reasons other than subterfuge designed to subvert the provisions of the teacher tenure law. (*Thrash v. Board of Education* (1982), 106 Ill. App. 3d 182, 184.) To be consistent with the purpose of the Code, the words "removed" or "dismissed" of section 24–12 (Ill. Rev. Stat. 1985, ch. 122, par. 24–12) have been interpreted by one court thusly:

> "[T]he words must encompass *any* reduction in the extent of employment. *** And limiting the application of 'removed' or 'dismissed' to instances of complete termination would—as a practical matter—totally obliterate the protections intended by the statute." (Emphasis in original.) *Caviness v. Board of Education* (1978), 59 Ill. App. 3d 28, 31.

Although *Caviness* dealt with the reduction of a teacher's responsibilities from full to part time, this same reasoning applies to the act of stripping a teacher of all teaching duties, for it has been held that "[t]he tap root of tenure doctrine is full-time teaching." *Johnson v. Board of Education* (1980), 87 Ill. App. 3d 441, 443, *aff'd* (1981), 85 Ill. 2d 338.

■ The board cites numerous cases for the proposition that tenure is not acquired in any particular position, here that of a music teacher, but one only attains tenure as a certified employee of the school district. (See, *e.g.*, *People ex rel. Brown v. Board of Education* (1978), 66 Ill. App. 3d 169, 171; *Newby v. Board of Education* (1977), 53 Ill. App. 3d 835, 837.) In line with this general rule, plaintiff did acquire tenure as a certificated employee of the school district. Under the tenure law the definition of teacher is an employee required to be certified. (*McNely v. Board of Education* (1956), 9 Ill. 2d 143, 146; *Lester v. Board of Education* (1967), 87 Ill. App. 2d 269, 272.) Therefore, we find that plaintiff has, at minimum, acquired tenure as a

teacher, a certified employee, not simply as an employee of the school district. Any transfer must be to a position that a certified employee is qualified to fill. Such a finding is consistent with the precept of interpretation in this area that a tenured teacher is entitled to a construction of the tenure laws consistent with the prime purpose of providing him with maximum protection. (*Jones v. Hannon* (1978), 58 Ill. App. 3d 504, 507; *Graham v. Board of Education* (1973), 15 Ill. App. 3d 1092, 1096.) We do not find that any assignment by the board of an activity that could be construed as extracurricular or outside of a teacher's primary teaching responsibilities constitutes dismissal or removal requiring the formalities of notice and a hearing (see, *e.g.*, *McLain v. Board of Education* (1978), 66 Ill. App. 3d 1024, 1026-27; *Caviness v. Board of Education* (1978), 59 Ill. App. 3d 28, 31), but only that here, the total deprivation of teaching responsibilities and assignments is the equivalent of dismissal under section 24—12 (Ill. Rev. Stat. 1985, ch. 122, par. 24—12). By its actions, the board of education had effectively dismissed the plaintiff, and it is thereby bound to follow the procedures prescribed by section 24—12 of the Code. Pursuant to section 24—12 the board is obligated to approve a motion containing specific charges, by a majority vote of all of its members. Unless the teacher requests that no hearing be held, the board is to schedule a hearing on its charges before a disinterested hearing officer not less than 30 nor more than 60 days from passage of its motion. Notice is to be served upon the teacher at least 21 days prior to the hearing date. The notice shall specify the charges against the teacher. Under section 24—12, if the board does not consider the teacher's problems to be sufficient cause for dismissal, but rather they are problems that can be remedied, this section also provides the procedure for dealing with such concerns, short of dismissal.

■ Plaintiff also challenges what he considers to be a "reduction" in his salary under section 24—11 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—11). Plaintiff has received no salary increase in the five years since the 1979-80 school year. He contends that the board's action in not granting any increases during this period violates that portion of section 24—11 that reads:

"Contractual continued service status shall not restrict the power of the board *** to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing ***." Ill. Rev. Stat. 1985, ch. 122, par. 24—11.

Plaintiff's salary was initially frozen for the 1980-81 school year

based upon his inadequate performance as a music instructor. School boards have discretionary control over teacher's salaries, subject only to express limits in the Code or any constitutional prohibitions regarding unreasonable, arbitrary, or discriminatory conduct by the board. (*Bond v. Board of Education* (1980), 81 Ill. 2d 242, 245; *Lester v. Board of Education* (1967), 87 Ill. App. 2d 269, 272.) This statutory provision does not prevent a reduction in salary for a tenured teacher, provided the reductions are uniform or based upon some reasonable classification. (*Richards v. Board of Education* (1960), 21 Ill. 2d 104, 107; *Jefferson v. Board of Education* (1980), 82 Ill. App. 3d 877, 882.) It is neither arbitrary nor unreasonable to classify or compensate teachers on the basis of their ability and value to the school system. (*Richards v. Board of Education* (1960), 21 Ill. 2d 104, 107.) The record reflects ample evidence of plaintiff's shortcomings as an instructor and numerous attempts at remediation by the school board. Given the continued inadequacy of plaintiff's performance, the board's action in electing not to grant plaintiff a raise was neither discriminatory nor unreasonable.

■ The fact that after two successive years with no increase plaintiff was reassigned to new responsibilities and has since remained at the same salary with no increase does not make such action a reduction within the meaning of section 24—11 (Ill. Rev. Stat. 1985, ch. 12, par. 24—11). Despite the board's changed reasoning for not providing any increase since plaintiff's reassignment, *i.e.*, plaintiff's new duties are not worth any increase in salary, such a determination remains within the scope of its authority. It is not arbitrary or unreasonable to classify or compensate teachers on the basis of their ability and value to the school system. (*Richards v. Board of Education* (1960), 21 Ill. 2d 104, 107; see also *Heifner v. Board of Education* (1975), 32 Ill. App. 3d 83, 87.) Beyond the statutory minimum, and plaintiff's salary of over $22,000 is clearly above the statutory minimum set forth in section 24—8 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—8), classification of salaries according to a teacher's education, ability, and experience at a certain position is left to the discretion of the board of education (*Jefferson v. Board of Education* (1980), 82 Ill. App. 3d 877, 882; *Winters v. Board of Education* (1978), 66 Ill. App. 3d 918, 919).

In this case, plaintiff cannot be heard to contest the salary paid him for the school years 1980-81 and 1981-82, for the board based its decision not to increase plaintiff's salary on substantial evidence, and plaintiff did not bring any challenge to its action at the time. Similarly, for the years 1982-83, 1983-84, and 1984-85, although plaintiff

protests his failure to receive any increase in salary, his performance of his reduced duties at the school and acceptance of the salary he was paid constitute a waiver of any claim that such salary was improper or illegal. Further, as mentioned, in setting his salary classification, the board acted reasonably within the parameters of its delegated powers.

This cause is remanded to the trial court for the entry of an order directing that the board of education convene to take the actions prescribed by section 24—12 and either adopt a proper motion to dismiss the plaintiff and hold a hearing as prescribed or to reinstate plaintiff to certified teaching duties.

Remanded with instructions.

NASH, P.J., and UNVERZAGT, J., concur.