Charles R. STRASBURGER,
Plaintiff–Appellant,

v.

BOARD OF EDUCATION, HARDIN COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 1, Hardin County Education Association of the Illinois Education Association/National Education Association, Dan Austin, Dennis Austin, Dan Bridges, and Gerald Miller, Defendants–Appellees.

No. 97–1302.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1997.

Decided May 4, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied June 26, 1998.

**354**

Douglas N. Dorris (argued), Harris, Lambert, Howerton & Dorris, Marion, IL, for Plaintiff–Appellant.

Nancy F. Krent (argued), Hodges, Loizzi, Eisenhammer, Rodick & Kohn, Arlington Heights, IL, for Defendant–Appellee Board of Education, board of Education, Hardin County Community School District No. 1.

Charles A. Werner, Schuchat, Cook & Werner, St. Louis, MO, for Defendants–Appellees Hardin County education Association of the Illinois Education Association/National Education Association, Dan Austin, Dennis Austin, Dan Bridges, Gerald Miller.

Before FLAUM, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The Hardin County Board of Education ("School Board") terminated a teacher, Charles R. Strasburger ("Strasburger"), using a reduction-in-force procedure. Strasburger insists the reduction-in-force was pretextual and the School Board engaged in a conspiracy to dismiss him for illegitimate reasons. He sued under 42 U.S.C. § 1983, claiming violations of his substantive due process liberty and property interest in employment, a violation of procedural due process, intentional infliction of emotional distress, and breach by the Hardin County Education Association ("Union") of the duty of fair representation. The district court dismissed the claim against the Union and granted summary judgment for the remaining defendants on all other claims. We affirm.

## I. HISTORY

We recount the facts in the light most favorable to Strasburger. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The School Board hired Strasburger in 1991 as Hardin County's industrial arts teacher, athletic director, and basketball coach. Strasburger had an impressive record as a high school basketball coach. By 1991 he had coached a team to the Illinois boys' basketball championship and two other teams to the finals. He was Illinois Basketball Coach of the Year in 1988 and district coach of the year five times. His overall winning percentage was 71%. Everything seemed to be going smoothly at Hardin County until Strasburger's second year, when he disciplined one of his basketball players, angering the boy's father, Gerald Miller ("Miller"). Shortly thereafter, Miller ran for a School Board position and won. Also on the School Board were individual defendants Dan Austin, Dennis Austin, and Dan Bridges. Some of the School Board members voiced their opinion that Strasburger should be dismissed.

Around the same time, the School Board became aware that Strasburger had a criminal record. He had been charged in Kentucky some fifteen years prior with burglary, sexual abuse, criminal trespass, and disorderly conduct; he was convicted only of criminal trespass and disorderly conduct and served one year in jail. After that he was not convicted of any other crimes. Accurate copies of Strasburger's criminal record began to circulate in the community. A letter derogatory to Strasburger appeared on car windshields. Rumors began to fly that Strasburger was a rapist and a danger to girls. Parents expressed their concern about Strasburger teaching their children.

On November 9, 1993, the new School Board held its first meeting. Their first official action, done in executive session, was to suspend Strasburger with pay from his coaching and athletic director duties but to allow him to continue teaching. Strasburger received no notice or opportunity to be heard regarding his suspension. The School Board's stated reason for suspending Strasburger was to investigate allegations that Strasburger was accepting illegal kickbacks from a tennis shoe company that supplied shoes to the county's athletic teams and allegations that he had entered into a contract without authorization from the School Board. The School Board also wanted to look into Strasburger's criminal past to discover whether he had any additional criminal history. During the suspension Strasburger was ordered to leave the school grounds every day at 1 p.m. and to turn in his keys. At the conclusion of the investigation, however, on December 20, 1993, the School Board reinstated Strasburger to his coaching and athletic director duties.

On March 10, 1994, the School Board conducted a reduction-in-force in accordance with Illinois procedures. Strasburger was honorably dismissed for the stated reasons that the School Board needed to conserve funds and the enrollments for his industrial arts classes were too low to justify the position. From 1981 to 1994 only one other teacher was dismissed after a reduction-in-force, and she was subsequently rehired.

Strasburger finished the year at Hardin County. In the 1994–1995 year he taught at the Carmi High School some distance from his home for lesser pay. In 1995–1996 he taught at the Shawnee Correctional Center, which is closer to his home and pays about the same as he was making in Hardin County (although the job is year-round rather than only nine months). Neither job involved athletics. He applied for six high school coaching jobs in Southern Illinois but he was not called for any interviews. He filed this suit in 1994.

## II. ANALYSIS

### A. Standard of Review

We review a district court's decision to grant summary judgment *de novo,* drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & Western Ry. Co.,* 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. However, neither "the mere existence of *some* alleged factual dispute between the parties," *id.* at 247, 106 S.Ct. at 2510, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.[1]

### B. Liberty Cause of Action

To make out a violation of § 1983, a plaintiff must show that "the conduct complained of was committed by a person acting under color of state law" and "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). Although the Constitution guarantees neither liberty of occupation, *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), nor liberty of reputation, *Paul v. Davis,* 424 U.S. 693, 708, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976), the

---

1. The School Board members appear to have an absolute immunity defense for their legislative actions under *Bogan v. Scott-Harris,* —— U.S. ——, 118 S.Ct. 966, —— L.Ed.2d —— (1998). However, the defendants never raised such a defense. It is waived, and we do not address it.

Supreme Court suggested in *Roth* that the state infringes on an employee's liberty interests if it discharges an employee while making false charges against him, so damaging the employee that he is precluded as a practical matter from finding other government employment. Since then, we have held many times that state employees have a liberty interest in not being discharged from their employment while being defamed such that they cannot get other government employment. *See, e.g., Olivieri v. Rodriguez,* 122 F.3d 406, 408 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998); *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1349 (7th Cir.1995); *Wallace v. Tilley,* 41 F.3d 296, 299 (7th Cir.1994); *McMath v. City of Gary,* 976 F.2d 1026, 1031–32 (7th Cir. 1992); *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991); *Ratliff v. City of Milwaukee,* 795 F.2d 612, 625 (7th Cir.1986). To prevail on this liberty cause of action, a discharged state employee must show that "(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Johnson,* 943 F.2d at 16. Strasburger has not shown a genuine issue of material fact as to the first element. We will not address the second and third elements because the first is dispositive. Since Strasburger cannot make out a constitutional violation, he has no cause of action under § 1983.

■ The first element requires the employee to show that a public official made defamatory statements about him. These statements must be false assertions of fact. *See, e.g., Ratliff,* 795 F.2d at 625. True but stigmatizing statements that preclude further government employment do not support this type of claim. Nor do statements of opinion, even stigmatizing ones, if they do not imply false facts. We also require the statements to come from the mouth of a public official. *See McMath,* 976 F.2d at 1031. Rumors and statements made to public officials do not suffice. Since the remedy available to a discharged employee who proves all the elements of the cause of action is a name-clearing hearing, *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977), the statements must be of a kind such that the discharged employee could refute them and clear his name, given the opportunity.

■ Strasburger puts forth evidence of several statements that, no doubt, stigmatized him. First, he points to a statement made by School Board member Dennis Austin to non-official Jim Shelby. Shelby submitted via affidavit that Austin said to him, "We need to get rid of that SOB Strasburger before he hurts one of those girls." Aff. of Jim Shelby, *Strasburger v. Board of Educ.,* No. 94–CV4272–JPG (S.D.Ill. Oct. 9, 1996). This statement is not a false assertion of fact—it is Austin's expression of opinion. This cause of action curtails no expression of opinion that does not imply a falsehood.

■ Second, Strasburger's wife asserted in her deposition that Dan Austin told a non-official at a School Board meeting, "Well, he has a lot of criminal charges and we've got to check them all out," and that he said something about a rape. Dep. of Kathy Strasburger at 54, *Strasburger v. Board of Educ.,* No. 94–CV–4272–JPG (S.D.Ill. July 29, 1996). Kathy Strasburger did not personally hear Austin make these statements. The listener later recounted the statements to her. The statement about criminal charges was not false—Strasburger indeed has a criminal record. Austin then expressed his intent that the School Board investigate. Again, this is not a false statement. It is an intention. And finally, Kathy Strasburger's assertion that Austin said something about a rape is not precise enough to be false. We cannot discern from the record whether Austin was making a prediction about the future or whether he was referring to the charge of sexual assault in Strasburger's criminal record. Evidence that Austin called Strasburger a rapist or asserted that he had raped someone would indeed be the kind of false and stigmatizing statement that might defeat summary judgment, but the evidence we see here is too vague to establish a genuine issue of material fact.

■ Third, School Board member Lafferty recounted in his deposition that he saw a

letter authored by School Board member Gerald Miller. Lafferty testified that he did not read the letter closely and cannot quote from it or remember words from it, but he recalls it was generally "derogatory" toward Strasburger. The letter apparently was distributed on car windshields in a parking lot. While the letter was doubtless stigmatizing, again we find ourselves unable to determine whether the letter contained false statements. "Derogatory" statements could well be true, but this cause of action requires false statements.

█ Fourth, Lafferty also testified in his deposition about a particular exchange at a School Board meeting. In response to the question, "Can you give me a flavor of what was said, what the discussion was about?" Lafferty replied, "The terms pervert were used [sic]. There was a telephone conversation between Dan Austin and myself in which Mr. Strasburger was discussed and his fitness to remain as a teacher and the danger to the children." Dep. of Edward Lafferty at 26, *Strasburger v. Board of Educ.*, No. 94–CV–4272–JPG (S.D.Ill. July 18, 1996). Even assuming that the word "pervert" was used at a public School Board meeting and not on the telephone to a fellow School Board member, we find no statement of fact. Austin again expressed his opinion about Strasburger without making a false assertion of fact.

█ Finally, Strasburger points to numerous places in the record where deponents assert they heard "rumors" to the effect that Strasburger is a rapist. No one was able to testify that they heard these rumors from a public official, as we require. The record leaves no doubt that Hardin County has not treated Strasburger well, but the record does not reflect a constitutional violation. Because Strasburger cannot provide evidence of false statements made by public officials, he cannot satisfy the elements of the employment/ defamation cause of action. Since he cannot demonstrate a constitutional violation, his § 1983 claim on this count must fail. The district court properly granted summary judgment.

## C. Property Cause of Action

█ Strasburger bases his second cause of action on a substantive due process property interest. He asserts that the School Board's conspiracy to take away his tenured employment deprived him of a constitutionally protected property interest. The district court granted summary judgment for the defendants because, under the doctrine of *Parratt v. Taylor*, Strasburger had adequate state remedies available to him and thus had not suffered a loss of due process. 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). We do not even reach the *Parratt* question because Strasburger has not properly raised a substantive due process property interest claim.

█ To make out a violation of § 1983, a plaintiff must show that "the conduct complained of was committed by a person acting under color of state law" and "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt*, 451 U.S. at 535, 101 S.Ct. at 1913. In the absence of elucidation from the Supreme Court, it has long been our precedent that a plaintiff who challenges the substance of a government decision on substantive due process grounds (as opposed to challenging the process the decision-makers used on procedural due process grounds) must show (1) that the decision was arbitrary and irrational, and (2) that the decision-makers either committed another substantive constitutional violation or that state remedies are inadequate. *See Kauth v. Hartford Ins. Co.*, 852 F.2d 951, 958 (7th Cir.1988); *see also Doherty v. City of Chicago*, 75 F.3d 318, 325 (7th Cir.1996); *Polenz v. Parrott*, 883 F.2d 551, 558–59 (7th Cir.1989). We have recently applied this very standard in an employment "property" case. *See Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir.1997).

The parties do not dispute that Strasburger had a protected property interest in his tenured teaching position. A generous reading of the record might also reveal a genuine issue of material fact as to whether the School Board acted arbitrarily and irrationally. However, Strasburger has not made out the second element by coming forward with

an additional constitutional violation or by showing that state remedies are inadequate. Thus, he has not made out a genuine issue of material fact as to all the elements of his claim, and the district court properly granted summary judgment on the property interest count.

■ Strasburger styles his property interest claim as a violation of "substantive due process." However, under that heading he also makes arguments that are more properly categorized as violations of procedural due process. For example, he complains that he "was given no notice and no hearing at any time before any part of his termination" and "he has been harmed by the absence of such notice and a hearing," and "[h]e has not been afforded 'due process' by the board officials before they took his protected property interest in his tenured employment." Br. for Appellant at 7. We will read his brief as making a procedural due process argument in addition to his substantive ones.[2]

■ "Procedural due process claims require a two-step analysis. The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process·is due." *Doherty*, 75 F.3d at 322 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *Forbes v. Trigg*, 976 F.2d 308, 315 (7th Cir.1992)). We skip to the second part of the analysis, which is dispositive here. To show a failure of due process, a plaintiff might show that state procedures as written do not supply basic due process or that state officials acted in an "random and unauthorized" fashion in depriving the plaintiff of his protected interest, *Parratt*, 451 U.S. at 540, 101 S.Ct. at 1915–16.

■ Strasburger is not challenging the constitutionality of Illinois' reduction-in-force procedure; that is, he is not arguing that the Illinois procedures do not supply basic due process. He vaguely argues that the School Board's actions were "random and unauthorized," *id.* at 541, 101 S.Ct. at 1916.

While the contours of the *Parratt* jurisprudence are ill-defined, the center of the doctrine is fixed-one who challenges state action as "random and unauthorized" must also demonstrate that state post-deprivation remedies do not satisfy due process. *Id.* For the Fourteenth Amendment does not protect against all deprivations; "[t]he Fourteenth Amendment protects only against deprivations 'without due process of law.' " *Id.* at 537, 101 S.Ct. at 1914 (quoting *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979)). State law remedies in theory can satisfy due process as well as federal ones, so we require plaintiffs seeking federal remedies to show the state's remedies lacking.

Strasburger has not alleged or shown that Illinois post-deprivation remedies are lacking. Therefore, Strasburger has not made out a procedural due process violation that necessitates a federal remedy. After all, what he complains of is a conspiracy by state officials to deprive him of a state-created property interest. The State of Illinois should have the first chance to assess the alleged violations of its own laws. The district court properly granted summary judgment to the defendants on the second count.

### D. Intentional Infliction of Emotional Distress

■ Strasburger also claims that the School Board intentionally inflicted emotional distress on him. The district court granted summary judgment to the defendants, reasoning that a claim for intentional infliction of emotional distress could not logically arise from a properly conducted reduction-in-force. Strasburger counters that the overarching conspiracy of the School Board made the reduction-in-force illegitimate. We agree with the district court.

■ To establish an intentional infliction of emotional distress in Illinois, a plaintiff must prove that: "(1) the defendant's conduct was extreme and outrageous; (2) the

2. We are left with the impression that Strasburger is creating an illusion, combining his best arguments from substantive and procedural due process in an attempt to make a complete whole.

In a confused area of the law like due process, courts and counsel alike must strive for the utmost clarity of language and precision of thought.

defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress." *Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498, 506 (1994) (citing *Public Fin. Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765, 767 (1976)).

The Illinois Appellate Court recently decided the factually similar case of *Brackett v. Galesburg Clinic Ass'n,* 293 Ill.App.3d 867, 228 Ill.Dec. 534, 689 N.E.2d 406 (1997). A medical clinic summarily dismissed its employee of forty-four years. The doctors of the clinic made this decision in executive session with no notice to the employee, in violation of their own articles of association. The doctors signed a letter to the employee and ordered her to leave the premises without collecting her personal belongings. The doctors ordered that her termination not be discussed with anyone and issued a summary statement to the newspaper merely noting her termination. One of the doctors hinted to other clinic personnel that the employee was dismissed for something "really bad." *Id.* 228 Ill.Dec. at 536–37, 689 N.E.2d at 408–09.

The appellate court granted the defendants' motion to dismiss, ruling that the complaint failed to state a cause of action. "[W]e conclude that although plaintiff was certainly subjected to hurt feelings and a certain amount of indignity, none of defendants' alleged actions constituted conduct that was outrageous or beyond the bounds of decency." *Id.* at 537, 689 N.E.2d at 409.

We are confident that an Illinois court would come to the same conclusion regarding Strasburger's claim. He was dismissed after a reduction-in-force. Although he contends that the reduction-in-force was pretextual and that the School Board defamed him, the conduct he complains of was not so "outrageous" as the Illinois tort of intentional infliction of emotional distress contemplates.

Likewise, he contends that the School Board members ruined his reputation and standing in the community, but as we discussed above, there is insufficient evidence to show that it was members of the School Board who made the defamatory comments and put a derogatory letter on windshields. We affirm the district court's decision to grant summary judgment to the defendants.

### E. Duty of Fair Representation

■ Strasburger next alleges that the Union failed adequately to represent him in his grievance against the School Board as required by the Labor Management Relations Act ("LMRA"). The district court dismissed this claim because the School Board, as a political subdivision, is not an "employer" under the LMRA. "We review a district court's decision to grant a motion to dismiss under Rule 12(b)(6) *de novo,* accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Mallett v. Wisconsin Div. of Vocational Rehabilitation,* 130 F.3d 1245, 1248 (7th Cir.1997). "[A] complaint [or part of a complaint] should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The LMRA specifically excludes political subdivisions from its definition of "employer." *See* 29 U.S.C. § 142(3) (incorporating definition of "employer" from 29 U.S.C. § 152(3)[3]). The parties do not contest that the School Board is a political subdivision; it therefore cannot be an "employer" under the LMRA. It follows that Strasburger is not an "employee," § 152(3),[4] because he does not work for an "employer."

Section 301 of the LMRA, 29 U.S.C. § 185(a), gives the federal courts jurisdiction to decide claims involving an "employer's" breach of contract with an organization rep-

---

**3.** "The term 'employer' ... shall not include ... any State or political subdivision thereof...." 29 U.S.C. § 152(2).

**4.** "The term 'employee' ... shall not include ... any individual employed ... by any other person who is not an employer as herein defined." 29 U.S.C. § 152(3).

resenting "employees": "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties...." Since the School Board is not an "employer" and Strasburger is not an "employee," § 185(a) provides no federal basis for his claim. *See also Ayres v. International Bhd. of Elec. Workers,* 666 F.2d 441, 444 (9th Cir.1982) (same result); *Crilly v. Southeastern Pa. Transp. Auth.,* 529 F.2d 1355, 1363 (3d Cir.1976) (same result). Because Strasburger did not invoke any other basis of federal jurisdiction, the district court properly dismissed his claim.

For the foregoing reasons we AFFIRM the district court's decision granting summary judgment to the School Board and the individual defendants and its decision granting the Union's motion to dismiss.

FLAUM, Circuit Judge, dissenting.

The Court disposes of Strasburger's "procedural" due process claim by determining that Strasburger argues that the actions of the School Board in conducting its reduction-in-force were "random and unauthorized"; on this basis, the Majority concludes that Strasburger's failure to establish the inadequacy of Illinois' post-deprivation remedies is fatal to his claim. I believe that this analysis is inconsistent with the Supreme Court's decision in *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), and that Strasburger's case fits within the "narrow" category of cases *Zinermon* carved out from the general rule established by *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and its progeny. *See*

*Cushing v. City of Chicago,* 3 F.3d 1156, 1165 (7th Cir.1993). Accordingly, I dissent.

The "random and unauthorized" label that the Majority attaches to Strasburger's characterization of the School Board's reduction-in-force procedure is a legal conclusion made by the Court, and not one asserted by the appellant in his brief.[1] This conclusion is significant, because when an alleged deprivation is the result of a random and unauthorized act, "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. In such a case, therefore, "no matter how significant the private interest at stake and the risk of its erroneous deprivation, the State cannot be required constitutionally to do the impossible by providing predeprivation process." *Zinermon,* 494 U.S. at 129, 110 S.Ct. at 985 (citation omitted). Because the Fourteenth Amendment does not proscribe all deprivations of life, liberty, or property, but only those deprivations that are perpetrated by the State without due process of law, we recognize that in cases in which predeprivation process would be impossible, post-deprivation process—in the form of a state-provided remedy or hearing—may be all the process that is due. *See, e.g., id.* at 127–30, 110 S.Ct. at 984–86; *Easter House v. Felder,* 910 F.2d 1387, 1396–97 (7th Cir.1990) (en banc), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991).

I believe that the record in this case supports an inference that the conduct of the School Board was neither random nor unauthorized as we have come to understand those terms. The *Parratt* line of cases establishes that the "controlling inquiry is sole-

---

[1]. I sympathize with the Majority's efforts to make sense out of Strasburger's briefs, in which the arguments are difficult to construe as set forth. While Strasburger seeks to apply *Zinermon* to the facts of his claim, he styles this constitutional claim as a deprivation of his "substantive due process property interest in tenured employment" and then argues that neither *Parratt* nor *Zinermon* are applicable in a substantive due process case. I concur in the Court's disposition of Strasburger's substantive due process

claim and will not address it here. However, despite his confusion over what is an admittedly murky area of the law, I believe that it is evident that Strasburger argues that the alleged deprivation was not "random and unauthorized." Of course, whether the deprivation was random and unauthorized is a legal conclusion; Strasburger's characterization of the Board's actions may be rejected if the facts as we review them on summary judgment do not support his argument.

ly whether the state is in a position to provide for predeprivation process." *Hudson v. Palmer*, 468 U.S. 517, 534, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984). When a state employee acts in contravention of established state procedures in order to deprive an individual of his property or liberty—even when that deprivation is intentional—predeprivation procedures would be futile "since the state cannot know when such deprivations will occur." *Id.* at 533, 104 S.Ct. at 3203. Under such circumstances, the "random and unauthorized" actions of the state employee dictate that adequate post-deprivation procedures are all that the Constitution requires. *Id.*

While *Zinermon* reaffirmed these principles, it qualified them by recognizing that in certain circumstances, state officials may abuse their "broadly delegated, uncircumscribed power" in a predictable manner. *See* 494 U.S. at 134–36, 110 S.Ct. at 987–89. When those same officials are the individuals charged with ensuring that proper procedures are followed, and "when those officials fail to provide constitutionally required procedural safeguards to a person whom they deprive of liberty [or property], the state officials cannot then escape liability by invoking *Parratt* and *Hudson*." *Id.* at 135, 110 S.Ct. at 988. In such a case, predeprivation process would not be futile; the officials charged by the State with ensuring that the proper procedures are followed are also alleged to have deprived the plaintiff of his liberty or property without following those procedures. See *id.* at 137–38, 110 S.Ct. at 989–90. In a *Parratt/Hudson*-type case, the State cannot reasonably be expected to prevent the substantive deprivation from occurring in the first place; by contrast, in a *Zinermon*-type case "it would indeed be strange to allow state officials to escape § 1983 liability for failing to provide constitutionally required procedural protections by assuming that those procedures would be futile because the same state officials would find a way to subvert them." *Id.* at 137–38, 110 S.Ct. at 990. In such a situation, *Zinermon* accordingly recognizes that post-deprivation procedures are irrelevant.

We discussed *Zinermon* at length in *Easter House v. Felder*, 910 F.2d 1387 (7th Cir. 1990) (en banc), *cert. denied*, 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991). We acknowledged that "*Zinermon* narrowed the scope of *Parratt's* application in certain factual circumstances" and recognized that "*Zinermon* hints that a 'narrow' application of the *Parratt* rule may be the appropriate course." *Id.* at 1400. Nonetheless, we concluded that "[i]n its most fundamental form, ... *Zinermon* holds only that predictable deprivations of liberty or property which flow from authorized conduct are compensable under § 1983." *Id.* at 1402; *see also id.* at 1400 ("[T]he dispositive factor in determining whether *Parratt* will indeed apply in a given situation is still whether the state actor's conduct is 'random and unauthorized' or, as the Court has rephrased it, whether the state actor's conduct is 'predictable and authorized'."). *Easter House* and our subsequent cases have used the "predictable and authorized" test because it is under those circumstances that the State could have provided meaningful predeprivation procedures. *See id.* at 1399; *see also Cushing*, 3 F.3d at 1165; *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1480 (7th Cir.1990).

In light of the above, I conclude that the allegedly wrongful deprivation of Strasburger's property interest in his tenured teaching position was both authorized and predictable. As in *Zinermon*, the State has delegated to the appellees "the power and authority to effect the very deprivation complained of here," 494 U.S. at 138, 110 S.Ct. at 990, the power to eliminate a tenured teaching position through a reduction-in-force. Further, the State delegated to the appellees "the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful [deprivations]." *Id.* The Illinois School Code sets out the procedures according to which a school board may dismiss a teacher in "contractual continued service". *See* 105 Ill. Comp. Stat. § 5/24–12. The dual role of the appellees in ensuring Strasburger's due process rights is distinguishable from the situation in *Easter House*, in which the defendants "did not have the duty to initiate ...

predeprivation safeguards." 910 F.2d at 1402. Through this dual role, the State authorized the appellees to divest Strasburger of his property interest.

Furthermore, I believe that the deprivation of Strasburger's property interest through an alleged pretextual reduction-in-force was predictable. Illinois courts recognize that the "purpose of the tenure statutes is to assure continuous service on the part of teachers of ability and experience", *Board of Educ. v. Bremen Dist. No. 228*, 101 Ill.2d 115, 77 Ill.Dec. 783, 786, 461 N.E.2d 406, 409 (1984), and as such, they strictly construe the provisions of the School Code governing tenure. *See id.* In addition, Illinois courts have stated that they "cannot countenance, in good faith or bad, any actions of a school board to rearrange teaching positions or assignments in ways which defeat the rights of tenured teachers and circumvent the purpose and spirit of the tenure laws." *Hansen v. Board of Educ.*, 150 Ill.App.3d 979, 104 Ill. Dec. 204, 208, 502 N.E.2d 467, 471 (1986). The School Code also allows school boards to dismiss tenured teachers for the reason of "economic necessity." *See* 105 ILL. COMP. STAT. § 5/24–12. Given these constraints, and the available economic necessity justification, it is foreseeable that a school board intent on dismissing a tenured teacher for illegitimate reasons would resort to a pretextual reduction-in-force procedure—the only manner in which a board could dismiss a tenured teacher without cause.[2]

This is not to suggest that all procedural due process claims by tenured teachers challenging reductions-in-force should survive a motion for summary judgment. Rather, I believe that the inquiry in such cases should carefully focus upon whether the plaintiff has established that the school board's reduction-in-force procedure was pretextual or a sham. In my judgment, Strasburger has presented evidence that creates a genuine issue of fact with respect to this question. The Majority

itself states that "[a] generous reading of the record might … reveal a genuine issue of material fact as to whether the School Board acted arbitrarily and irrationally." Maj. Op. at 357. In addition, Strasburger offered deposition testimony from one School Board member that supports an inference that the appellees acted pretextually in conducting the reduction-in-force.

The substance of this pretext inquiry, however, is not central to my disagreement with the Majority. The Majority, concluding that any misconduct that may have occurred was "random and unauthorized", does not reach this issue, and it instead suggests that Strasburger's claim could have been subject to a motion to dismiss—due to Strasburger's failure to allege that Illinois post-deprivation remedies are inadequate. In this case, because the State was in a unique position to provide Strasburger with meaningful predeprivation procedures, I conclude that the Majority's "random and unauthorized" conclusion conflicts with *Zinermon*. For that reason, I respectfully dissent.

---

2. Indeed, evidence presented in this case, if read in the light most favorable to Strasburger, supports an inference that the appellees' economic necessity justification was in fact pretextual. After the School Board suspended and then reinstated Strasburger earlier in the 1993–94 school year, in March of 1994 Strasburger and one

other teacher were the first teachers subjected to a reduction-in-force by the Board in thirteen years. The school district was operating at a financial surplus during this period, and the other tenured teacher was rehired by the Board in the Summer of 1994.