In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2745

TAMIKA GRAHAM,

*Plaintiff-Appellant,*

*v.*

BOARD OF EDUCATION OF THE CITY OF CHICAGO and HEALTH CARE SERVICE CORPORATION,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 4761 — **Virginia M. Kendall**, *Judge.*

ARGUED MAY 26, 2021 — DECIDED AUGUST 10, 2021

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Chicago offers public-school teachers higher pay if they earn extra college credits. Tamika Graham sought a higher salary under this program in July 2015, only to have her application ignored. She tried again in September, and this time she was not ignored. Instead she was fired on the ground that her application had been backdated,

which the Board of Education took as fraud. A hearing officer
ordered her reinstated with back pay, but the Board did not
honor this decision in full, published a declaration that she is
a fraudster, and refused to consider her for open positions.
These and all other factual statements come from her com-
plaint, which we must accept at this stage of the litigation.

Graham contends that the school system violated 42
U.S.C. §1983 by discriminating against her on account of sex
and race, violated the Employee Retirement Income Security
Act (ERISA) by depriving her of pension and health benefits,
and violated an Illinois law that requires the prompt payment
of wages. She has some other legal theories as well, and we
explain later why they need not be discussed. As for the three
we have mentioned: the district judge dismissed the com-
plaint on the ground that it does not state a claim on which
relief may be granted. Fed. R. Civ. P. 12(b)(6). The judge stated
that the §1983 claim fails because the complaint does not iden-
tify other employees who received better treatment from the
school system, that the ERISA claim fails because the school
system's plans are exempt from ERISA, and that the wage-
payment claim fails because the correct calculation of Gra-
ham's pay depends on interpreting a collective-bargaining
agreement, which the judge thought preempted by federal la-
bor law. See 2019 U.S. Dist. LEXIS 7579 (N.D. Ill. Jan. 16, 2019)
(dismissing with leave to file an amended complaint), 2019
U.S. Dist. LEXIS 110365 (July 2, 2019) (dismissing the amended
complaint and terminating the suit).

The first of these decisions demands too much of a com-
plaint. The district judge wanted Graham to put in the com-
plaint all facts that would be needed to defeat a motion for
summary judgment. But that's not the function of a

complaint. Even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a complaint in federal court pleads claims, not facts. A claim must be plausible, but it need not supply the specifics required at the summary-judgment stage. So the Supreme Court said in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), which holds that fact pleading to show a prima facie case is not needed in an employment-discrimination case. Neither *Twombly* nor *Iqbal* questions the continuing force of *Swierkiewicz*. It is enough for a plaintiff to assert that she was treated worse because of protected characteristics. See, e.g., *Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010). That's what Graham did assert. Whether she can prove this is a subject for a later stage of the litigation.

The state-law wage-payment claim likewise requires little analysis. The school system does not deny that 820 ILCS 115 requires it to pay, promptly, everything that is due—and for Graham what is due includes a back-pay award. But the Board argued, and the district judge held, that the Labor Management Relations Act, 29 U.S.C. §§ 141–97, preempts state law because the calculation of Graham's salary (and her back pay) depends on interpretation of a collective-bargaining agreement between the school district and the teachers' union. That position fails to reckon with 29 U.S.C. §152(2), which excludes states and their subdivisions from the scope of this Act. See also *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998). Illinois law alone determines whether the school system owes Graham extra for delay in payment.

The district court's errors with respect to §1983 and preemption may be understandable because Graham represents herself. The school system's counsel did not call

*Swierkiewicz* or §152(2) to the district court's attention (or ours)—though it should have done so, because Graham was unaware of these controlling authorities. See N.D. Ill. Local R. 83.50, incorporating ABA Model Rule of Professional Conduct 3.3(a)(2). (Local Rule 83.50 adopts all of the Model Rules, unless inconsistent with Illinois law, and Rule 3.3(a)(2) is compatible with Illinois law.) Graham has a right to self-representation, see 28 U.S.C. §1654, and her decision to use that right has significance for the ethical responsibilities of defendants' counsel. Surely the Board of Education and its lawyers know about §152(2), which affects all of the Board's labor relations. The district judge should not have been left in the dark.

Although Graham does not want to be represented by a lawyer, we asked one to appear as *amicus curiae* and present oral argument on the ERISA question, which is more complex than the two subjects we have covered. Whitney D. Hermandorfer of Williams & Connolly LLP filled this role ably, as did J. Matthew Rice of the same firm, who presented oral argument. Both have our thanks.

Two sections of ERISA exempt governmental pension and welfare plans from the statute's coverage. Section 4(b)(1), 29 U.S.C. §1003(b)(1), provides that ERISA (technically, "this subchapter" of Title 29) does not apply to an employee benefit plan if "such plan is a governmental plan (as defined in section 1002(32) of this title)". Section 1002(32) defines a "governmental plan" to include "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." The district court observed that Chicago's school system is a subdivision of Illinois and concluded that this settles the matter.

Graham maintains that charter schools in Illinois are private bodies whose employees are included in Chicago's pension and welfare-benefit plans; she contended that this means that ERISA must apply. But the district judge thought it enough that the plans were "established" and "maintained" by the Board of Education. The statute uses the word "or", so either establishing or maintaining will suffice, and Chicago's plans satisfy both. This makes it irrelevant, the district judge wrote, whether the plans also cover employees of private businesses. 2019 U.S. Dist. LEXIS 7579 at *7–8.

A problem with this approach is that the definitional clause speaks of a plan "established or maintained [by a unit of government] *for its employees*" (emphasis added). The Department of Labor, which has a principal role in administering ERISA, understands the phrase "for its employees" to mean that, to be exempt, a governmental plan must not include more than a "de minimis" portion of private workers. See Advisory Op. 2012-01A at 3–4 (Apr. 27, 2012); Advisory Op. 2005-07A at 2 (May 3, 2005); Advisory Op. 2004-01A (Jan. 27, 2004); Advisory Op. 95-27A (Nov. 8, 1995). An earlier opinion assumed that a governmental plan could not include even one private employee. Advisory Op. 83-54A (Oct. 21, 1983).

The statutory language and the administrative opinions present all sorts of problems. For example, what does the phrase "for its employees" modify? "Maintained" alone, or both "established" and "maintained"? The immediate antecedent of "for its employees" is "maintained", but "established or maintained" seems to be a unit of like things, which would imply that the phrase modifies both. Recent decisions of the Supreme Court have had some trouble with the series-qualifier canon and the rule of the immediate antecedent.

Compare *Lockhart v. United States*, 577 U.S. 347 (2016), with *Paroline v. United States*, 572 U.S. 434 (2014). It isn't clear what the Justices would make of ERISA's language.

Suppose a plan has only governmental workers when it is "established" but coverage for private workers is added later. Is that enough to maintain the exemption even though the plan is no longer "maintained" exclusively for public workers? The Department of Labor's opinions do not address that question, though the answer could affect how to treat Chicago's plan. And what weight do the Department's opinions receive when they apply? They are not regulations or administrative adjudications, so they are not entitled to *Chevron* deference—compare *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), with *United States v. Mead Corp.*, 533 U.S. 218 (2001)—but they might be entitled to respect to the extent that they are well reasoned. See *Yates v. Hendon*, 541 U.S. 1, 17–18 (2004). But do they qualify? Where does the "de minimis" standard come from, except thin air? What does it mean concretely? Why isn't it enough that a governmental plan covers *some* public employees, whether or not it also covers private workers?

Fortunately, we need not answer any of these questions today. Graham and the *amicus curiae* want us to treat charter schools as private entities, but we conclude that Illinois law provides otherwise. For one thing, that's what state law says: "A charter school shall be a public, nonsectarian, nonreligious, non-home based, and non-profit school." 105 ILCS 5/27A-5(a). State law adds that charter schools operate "within the public school system" of Illinois. 105 ILCS 5/27A-2(a)(3). We may assume that a bare declaration of public status, without the attributes of public operation, would not suffice to produce

governmental employees for the purpose of ERISA. Still, charter schools have enough public attributes to make them (permissibly) governmental under ERISA.

Example: each charter school is "funded by the school district in which it operates." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 458 (2005) (cleaned up). Charter schools must have governing bodies that are "separate and distinct from the governing body of any [charter management organization] or [educational management organization]." 105 ILCS 5/27A-10.5. The Illinois State Board of Education must approve charter schools (and their credentials' renewals) and must "review the governance model proposed by the applicant to ensure that there are no conflicts of interest." 105 ILCS 5/27A-10.5(b). The local school board and governing body of the charter school also must approve. 105 ILCS 5/27A-6. Each "governing body must include at least one parent or guardian of a pupil currently enrolled in the charter school". 105 ILCS 5/27A-5(c). A charter means that "the local school board authorizes the governing body of the charter school to operate the charter school on the terms specified in the contract." 105 ILCS 5/27A-6(a). The charter also "may not waive or release the charter school from the State goals, standards, and assessments established [under state law]" and (depending on population) may require the charter school to administer "any other nationally recognized standardized tests". 105 ILCS 5/27A-6(b). Once a charter school is approved, the school receives state funding to cover its start-up costs as well as the ongoing costs of operation. 105 ILCS 5/27A-11.5(2).

What distinguishes charter schools from ordinary public schools in Illinois is that they are not *administratively* parts of

the school district. They have their own managers, who hire and fire teachers and decide how much to pay them. Charter schools' teachers are not subject to the collective-bargaining agreements that govern public-school teachers. Administrative flexibility is the stated benefit of a charter school, which introduces an element of competition into the public education system. Parents get to choose where to send their children, and if more flexibility produces better educational results, that will put pressure on public schools to improve. And if a charter school doesn't hold up well against other schools, it will fail. Competition works both ways.

Because the state not only funds the charter schools but also approves their establishment and continued existence, it is not appropriate to treat them as private institutions subject to public regulation. Cf. *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982). The business model of a charter school is some distance from the model of a genuinely private school, such as the University of Chicago Laboratory Schools, the Francis W. Parker School, Christian Heritage Academy, or Saint Mary of the Angels School. Like a state university, a charter school in Illinois is part of the set of public educational offerings, which makes it appropriate to conclude that the school district may include charter-school teachers in its pension and welfare plans without losing its exemption under ERISA. Indeed, coverage of the charter-school teachers is another indicator that they are "public"; it is how Illinois ensures that their pensions and other fringe benefits are paid, even if a given charter school decides to close its doors.

This wraps up our discussion of the three principal issues. As we said earlier, Graham advances many other contentions, but it is not clear to us how she could have been injured by

the other things of which she complains, and injury is essential to make a suit justiciable. See, e.g., *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

For example, Graham contends that the school district violated several federal statutes by billing her for payments that the letters said were necessary to continue her medical insurance after her discharge. But Graham did not pay, and the school district did not cut off her health coverage. Another example: Graham accuses the school system of violating the Due Process Clause by not offering her an adequate hearing about the validity of her discharge. Yet a hearing was offered and held, and Graham prevailed. Where's the injury?

The school system's brief contended, among other things, that Graham has not adequately pleaded injury. Graham's reply was generic. She observed that she pleaded lost wages. That's why her §1983 and late-payment claims are live. She could be entitled to compensatory damages even if she has received full back pay. See *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 72–73 (2006). But Graham did not say how *each* of her claims entails injury. After oral argument, we gave her another chance. We directed Graham to explain by June 9 how she "has been injured by *each of* the things about which she complains. This information is essential to establish whether Graham has standing." Order of May 27, 2021 (emphasis added). Graham ignored this directive. Her silence forfeits any claim of injury, except to the extent of the three substantive topics that we have discussed.

One final observation. Defendants contend that Graham lost any opportunity to recover damages for the two claims that we have held are valid because she filed a petition in bankruptcy, and received a discharge, without revealing

these claims in her lists of assets. Omitting legal claims from bankruptcy filings can cost a litigant the opportunity to pursue them. See, e.g., *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006); *Biesek v. Soo Line R.R.*, 440 F.3d 410, 413 (7th Cir. 2006). But this is not a jurisdictional problem. Defendants did not mention the bankruptcy in the district court. Just as Graham has forfeited her opportunity to show injury from many of her claims, defendants have forfeited their opportunity to have Graham's remaining claims dismissed as a penalty for concealing assets during bankruptcy.

With respect to all but the ERISA, §1983, and late-payment claims, the judgment of the district court is vacated, and the case is remanded with directions to dismiss for want of a justiciable controversy. With respect to the §1983 and late-payment claims, the judgment is vacated, and the case is remanded for proceedings consistent with this opinion. With respect to the ERISA claim, the judgment is affirmed.